IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VICTORIA MEZA, § | |
| a/n/f of Guadalupe Meza, a minor child § | |
|     Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-04-1496 |
| § | |
| JOANNE B. BARNHART § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
|     Defendant. § | |

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 9) and Defendant's Motion for Summary Judgment (Document No. 8).[1] After considering the motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the decision of the Commissioner is AFFIRMED.

**I. Introduction**

Plaintiff, as next friend of her minor child, brings this action seeking judicial review of a final

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on February 28, 2005. (Document No. 10).

decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for childhood supplemental security income benefits based on disability under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et. seq.* According to Plaintiff, substantial evidence does not support the ALJ's decision, and the ALJ, Clifford A. Leinberger, committed errors of law when he found that Plaintiff was not eligible for benefits. Plaintiff argues that substantial evidence does not support the ALJ's finding that the minor child's impairments are "less than marked" in the following two areas: acquiring and using information and attending and completing tasks. Further, Plaintiff has submitted new and material evidence that was not previously available, which documents that the minor child has a poor level of intelligence. Plaintiff seeks an order reversing the Commissioner's decision, or in the alternative, an order remanding Plaintiff's application and directing that it be consolidated with her pending 2004 application. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Plaintiff's minor child was not disabled as a result of her impairments, that the decision comports with applicable law, and that it should therefore be affirmed.

**II. Administrative Proceedings**

On January 22, 2002, Plaintiff applied for childhood supplemental security income benefits on her child's behalf. (Tr. 52-53).[2] The Social Security Administration denied this application at the initial and reconsideration stages. (Tr. 25-35). After that, Plaintiff requested a hearing before an ALJ. (Tr. 36-37). The Social Security Administration granted her request and the ALJ held a hearing on July 31, 2003 (Tr. 278-285), which was continued to September 25, 2003 (Tr. 259-277),

---

[2] "Tr." refers to the transcript of the administrative record.

at which the claim was considered *de novo*. On October 21, 2003, the ALJ issued his decision finding that the minor child did not satisfy the criteria for receiving childhood disability benefits. (Tr. 11-22). The ALJ found that the minor child has learning disabilities and a diagnosis of a seizure disorder. Next, the ALJ found that the minor child did not have an impairment or combination of impairments that met or was medically equal to any listed impairment. Specifically, the ALJ found that the minor child had less than a marked limitation in the ability to acquire and use information, attend and complete tasks, interact and relate with others, and care for herself, and in the domain of health and physical well-being. He further found that the minor child had no limitations in the ability to move about and manipulate objects. Based on these findings, the ALJ found that the minor child had no impairment or combination of impairments that functionally equaled the listings and therefore was not disabled within the meaning of the Act.

Plaintiff sought review by the Appeals Council of the ALJ's adverse decision. (Tr. 9-10). The Appeals Council concluded, on January 9, 2004, that there was no basis upon which to grant Plaintiff's request for review. (Tr. 5-7). The ALJ's findings and decision thus became final. Plaintiff has timely filed her appeal of the ALJ's decision. The Commissioner has filed a Motion for Summary Judgment (Document No. 9). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 285 (Document No. 5). There is no dispute as to the facts contained therein.

### III. Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits is only: "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's

3

decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d

1127 (5th Cir. 1973)).

**IV.  Burden of Proof**

On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the 1996 Act), which amended the statutory definition of disability for children seeking SSI benefits.  To be disabled, an individual not yet eighteen must suffer from a medically determinable physical or mental impairment (or a combination of such impairments), which results in marked and severe functional limitations and which can be expected to last for a continuous period of not less than twelve months.

Under the three step sequential evaluation process outlined in 20 C.F.R. § 416.924, the ALJ considers:  (1) whether the child is doing substantial gainful activity;  (2) if not, whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *see* 20 C.F.R. § 416.924(a-d).  In addition, with respect to the third step, the ALJ evaluates the child's functional limitations in light of six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i-vi).  A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked"[3] limitations in two domains or an "extreme"[4] limitation in one domain. 20 C.F.R.

---

[3] The regulations define a "marked limitation" as follows:
We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate,

5

§ 416.926a.

In the instant action, the ALJ, in the first two steps of the process, concluded that the minor child was not working and that the minor child's learning disabilities and diagnosis of a seizure disorder were severe impairments. Next, the ALJ evaluated the minor child in light of the six relevant functional domains. In this case, the ALJ concluded that the minor child had less than marked limitation in the ability to: acquire and use information, attend and comple tasks, interact and relate with others, care for herself, and health and physical well-being. The ALJ further found that the minor child had no limitations in the ability to: move about and manipulate objects. Therefore, the ALJ found that the minor child's impairments did not meet, medically equal, or functionally equal the severity of an impairment listed in the regulations. As such, the ALJ concluded that the minor child was not disabled under the Act. The Court's inquiry is limited to the determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the correct legal

---

sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R.   § 416.926a(2)(i).

[4] The regulations define "extreme" limitation in a domain as follows:
We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(3)(i).

standards were applied. *Masterson v. Barnhart,* 309 R.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart,* 288 F.3d 212, 214 (5th Cir. 2002). " The court is not to reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

**V. Discussion**

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence. Specifically, Plaintiff contends that the Commissioner did not properly assess the minor child's impairments, and in particular, erred in finding that the minor child's impairments are "less than marked" in the following domains: acquiring and using information and attending and completing tasks. Plaintiff contends that the minor child had an "extreme" limitation in the domain of acquiring and using information, and in the alternative, had a "marked" limitation in the domains of acquiring and using information and attending and completing tasks. According to Plaintiff, the results of the December 2001 Individualized Education Program ("IEP"), which had been prepared on her behalf by the Pasadena Independent School System, show she was limited in the two domains. For example, the evaluator wrote: "severe discrepancy exists between the student's intellectual ability and her achievement levels....," the results of comprehensive testing revealed that the minor child had "extremely low" academic functioning, and she had a poor ability to retain instruction. (Tr. 86, 147). The Commissioner, in response, argues that because the minor child's seizure disorder was controlled through medication, and because the Medical Expert testified that a learning disability is not a listed impairment (Tr. 217, 273-275) the ALJ properly found that the minor child did not have an

7

impairment that met or medically equaled an Appendix 1 listing. In addition, the Commissioner argues that the ALJ properly assessed the minor child's functional limitations in the six domains.

The record shows that the minor child was treated by Hugo Orellana, M.D., for a seizure disorder. In a letter dated September 15, 2003, Dr. Orellana wrote:

> To who it may concern:
>
> The above named child is a patient of mine. She has been diagnosed with seizure disorder. She has been prescribed medication to help with this and the medication must be taken on a regular daily basis. Guadalupe will be required to have routine doctor visits and blood work to monitor her medication level.
>
> Guadalupe should avoid climbing high places, excessive running or exercise.
>
> Thank you for your attention in this matter. Please call if you have any questions in this matter. (Tr. 217).

According to the records, the minor child's prescribed medications include Depakote, for seizures. (Tr. 218).

In addition, the minor child's school records show the minor child repeated the first grade, and was in the fourth grade at the time of the administrative hearing. The school records of the minor child show that in connection with her placement in the special education/resource program, an Individualized Education Program ("IEP") was developed based on various psychological and intelligence tests which were administered to the minor child, and that IEP's were prepared for subsequent school years. Also, the record contains the transcript of a hearing that was held on September 25, 2003. (Tr. 259-277). Testifying at the hearing were Plaintiff and Asha Khushalani, M.D., a medical expert. The transcript of the September 23, 2003, hearing reveals that Plaintiff was advised by the ALJ that the hearing could be postponed so that she could retain an attorney. However, Plaintiff declined to postpone the hearing and insisted that the hearing go forward without

her being represented by counsel. (Tr. 262). Plaintiff testified that the minor child has been prescribed Depakote for her seizures. According to Plaintiff, the minor child's symptoms have been controlled with this medication. She further testified that the minor child has never been examined by a psychiatrist or participated in counseling. (Tr. 273). Dr. Khushalani, a certified child psychiatrist, based on his review of the medical record from Dr. Orellena, and the minor child's school records, opined:

> Judge, this is a nine-year-old girl who basically records are from school and indicate that she has some learning disability, primarily in the reading arena and difficulties related to she being of Hispanic origin and English being her second language. There is no history of any psychiatric problems or behavior problems. She apparently has seizures, as evidenced by the medication submitted today in the letter from a neurologist that she has a seizure disorder and she has been started on Depakote, which, according to the mother's testimony, she's doing well on that. So there is no psychiatric history, per se, but she does have learning disabilities and she is in some resource classes to address that. Intellectually, she's low average. There don't (sic) seem to be any behavior problems at school or major behavior problems at home. So in terms of a given listing, I don't even think there's a listing to consider.
>
> \*            \*            \*
>
> And I don't think symptoms are severe that there's any functional equivalence, as well. So acquiring and using information is less than marked. Attending and completing information... is less than marked
>
> \*            \*            \*
>
> Attending and completing tasks is also less than marked. Interacting and relating with others is less than marked. Moving about and manipulating objects is no limitations. Caring for self is less than marked. Health and physical ability is less than marked. (Tr. 274-275).

According to the Dr. Khushalani, while the minor child has some learning disabilities, these difficulties were exacerbated because English is the minor child's second language. Overall, Dr. Khushalani opined that the minor child had moderate learning disabilities. (Tr. 275). With respect to the minor

9

child's history of seizures, Dr. Khushalani testified that the minor child had been doing well. (Tr. 276).

Here, the thoroughness of the ALJ's decision shows that he carefully considered the records and testimony, and that his determination reflects those findings accurately. The ALJ summarized the evidence and set forth specific reasons concerning the three step evaluation of Plaintiff's claim for SSI benefits for her minor child. The ALJ wrote:

> The records indicate that the claimant was evaluated through the school to determine if she qualified for special education services. Based on information from teachers, classroom observation and other assessment data, it was determined that the claimant appeared very limited in Spanish and negligible in English (Exhibit 1F, page 36). The claimant was given the Leiter International Performance Scale (Revised), an expressively non-verbal measure of global intelligence with fair cross-cultural applicability (proven successful in the intellectual assessment of non-English speaking people). Her full scale IQ indicated non-verbal global intellectual functioning to be within the average range (Exhibit 1F, pages 39 and 40). There was a discrepancy between her intellectual ability and her achievement levels which was not correctable without special education and related services (Exhibit 1F, page 45). She was functioning below grade level in Reading Comprehension with discrepancies noted in all academic areas in English. It was thought that the discrepancies between ability and achievement might be primarily the result of cultural/linguistic differences. Lack of English language development could not be ruled out as a significant factor affecting the claimant's ability to function on grade level in an English only classroom (Exhibit 1F, page 42).
>
> The Admission, Review, Dismissal (ARD)/Individual Education Plan (IEP) Report reflects that the claimant qualified for special education services due to a learning disability (reading, written language, and math) (Exhibit 5F, page 2). The claimant's report cards reflect that she had passing grades and satisfactory ratings in work habits/general conduct (Exhibit 5F, pages 4, 21 and 25). A report from the claimant's first grade bilingual teacher dated March 2002 indicates that the claimant went to resource classes every day for language arts (reading, writing, spelling) and then came to her class for the rest of her subjects. She stated that she behaved appropriately with her and other adults. She stated that she had an average ability to follow oral instructions, express herself adequately when called upon, complete tasks on time, and make and keep friends. She stated that she had a below average ability to comprehend classroom discussion, remember information just heard, and exhibit organization in accomplishing tasks. According to the claimant's teacher, she had a

poor ability to retain instruction from week to week (Exhibit 4E).

Dr. Khushalani, a Board-certified psychiatrist, testified that there was no indication that the claimant had ever seen a psychiatrist or been in counseling. He stated that the school records showed that the claimant had learning disabilities, primarily in reading. According to Dr. Khushalani, there was no history of any psychiatric or behavioral problems. He noted the report from Dr. Orellana related to seizures. He stated that Depakoate was prescribed for seizures and at times for mood swings. He noted the claimant's mother's testimony that the claimant had done well on this medication. Dr. Khushalani testified that the claimant was intellectually low average and in some resource classes.

It was the opinion of Dr. Khushalani that the claimant had a less than marked limitation in the ability to acquire and use information, attend to and complete tasks, interact and relate to others, and care for herself and in the domain of health and physical well-being. He stated that she had no limitations in the ability to move about and manipulate objects. The undersigned accepts the assessment of Dr. Khushalani as being consistent with the evidence of record.

In reaching a conclusion regarding the claimant's ability to function, the subjective complaints were taken into consideration and evaluated in accordance with section 416.929 (20 CFR 416.929) which incorporates Social Security Rulings 88-13 (Cumulative Edition, 1988) and 90-1p (Cumulative Edition, 1990-91), restated and clarified in Social Security Ruling 96-7p.

Disability was alleged due to a learning disability. The claimant's mother was asked how the claimant's conditions limited daily activities, and she responded that the claimant could not read or complete a sentence (Exhibit 3E).

The medical records document that the claimant has learning disabilities for which she receives special education services through the school. An inability to read or complete a sentence is not a basis for a finding of disability under Social Security law and regulations.

The claimant's mother suggested that the claimant had behavioral problems (Exhibit 5E, page 5). However, the reports from the school indicate that she behaves appropriately. There is no documentation of a mental impairment other than the learning disabilities. There is no documentation that she has received psychiatric care or counseling. There is no evidence that she has a marked limitation in any of the areas of functioning and used for evaluation of a child in supplemental security income cases.

Considering the claimant's history, lack of treatment for any mental impairment other

11

> than learning disabilities, the test results as reflected in school records, the subjective complaints, the assessments of the State Agency reviewers, the testimony of the medical expert, and all of the evidence of record considered as a whole, it is concluded that the claimant has less than marked limitation in the ability to acquire and use information, attend to and complete tasks, interact and relate to others, and care for herself and in the domain of health and physical well-being. She has no limitations in the ability to move about and manipulate objects.
>
> Since the clamant does not have marked limitations in at least two domains or extreme limitations in any domain, the undersigned finds that the claimant does not have an impairment or combination of impairments which functionally equals the listing. Accordingly, the undersigned concludes that the claimant has not been under a "disability" as defined in the Social Security Act at any time through the date of this decision (20 CFR 416.924(d). (Tr. 19-21).

Upon this record, none of the December 2001 test scores relied upon by Plaintiff suggest the minor child had an "extreme" limitation in acquiring and using information or had "marked" limitations in acquiring and using information and in attending and completing tasks. It is undisputed that at the time the minor child was tested in December 2001, the testing showed a "severe discrepancy exists between the student's intellectual ability and achievement levels which is not correctable without special education and related services." (Tr. 147). According to the IEP, this discrepancy "between ability and achievement may be primarily the result of cultural/linguistic differences. Therefore, lack of English language development cannot be ruled out as a significant factor affecting Guadalupe's ability to function on grade level in an English-only classroom." (Tr. 144). However, the regulations provide that no one piece of evidence, not even test scores, is dispositive.[5] As a result, the initial scores of the minor child are not determinative and should be

---

[5] The regulations provide:
[W]e will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain...We will consider your test scores together with the other information we have about your functioning, including reports of classroom performance and the observations of school personnel and others. 20 C.F.R. § 416.926a(e)(4)(i-ii).

considered in light of the child's overall performance. Here, the subsequent IEP progress evaluations of the minor child that were completed for school years 2002 and 2003, show improvement with respect to the minor child's overall performance. Based on this record, Plaintiff has not shown that the ALJ erred in failing to find that the minor child had "marked" limitations in two domains: acquiring and using information and attending and completing tasks or had an "extreme" limitation in the domain of acquiring and using information.

Plaintiff has attached to her motion for summary judgment, a copy of a psychological evaluation IQ and Mental Status of the minor child which had been performed on July 12, 2004. (Document No. 9, Exhibit A). In particular, Plaintiff argues that the minor child's verbal comprehension score of 73 shows that the ALJ erred in finding that the minor child had an average intelligence, and further suggests that this test score taken in connection with the minor child's illiteracy and seizure disorder satisfied Listing 112.05D,[6] the listing for mental retardation.

"It is well established that in cases brought under § 405(g), evidence external to the administrative record is generally inadmissible, and on judicial review the court cannot consider any evidence that is not already part of the administrative record." 42 U.S.C. § 405(g); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). When such evidence is submitted by a party, the Court considers the evidence only to determine

---

[6] Listing 112.05 (Mental Retardation) states:
Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
   \*   \*   \*
D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

whether remand is appropriate under sentence six of § 405(g). The second clause of sentence six of § 405(g) provides that the court 'may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir. 1984); *Ripley v. Chater*, 67 F.3d 552, 555 (5thCir. 1995). In addition, the new evidence must relate to the time period for which benefits were denied. *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir. 1989). Also, there must be a reasonable probability that the new evidence would have changed the outcome of the Commissioner's determination. *Latham*, 36 F.3d at 483.

Here, Plaintiff has shown that the evaluation is new and has shown good cause for not including the evaluation in the record of the administrative procedure. However, Plaintiff has not shown that there is a reasonable probability that this information would have changed the outcome of the Commissioner's determination.

**Conclusion**

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Plaintiff was not disabled within the meaning of the Act, that substantial evidence supports the ALJ's decision, and that the Commissioner's decision should be affirmed. As such, Plaintiff's Motion for Summary Judgment (Document No. 10) is DENIED, Defendant's Motion for Summary Judgment (Document No. 8), is GRANTED and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 24th day of August, 2005.

_____
Frances H. Stacy
United States Magistrate Judge